Good morning. May it please the court, I would like to save whatever remaining time I have for rebuttal. My name is Barry Pollack. I represent the appellant, Dwayne Lequire. Mr. Lequire was charged with and convicted of embezzling property, money or property, of Spirit Mountain Insurance Company. The fundamental issue in this appeal is whether the money at issue was in fact the money or property of Spirit Mountain. Patriot collected money from insurers and put it in its commingled account. At that point, the question is, did that money belong to Spirit Mountain? In the Ninth Circuit's decision in Lawson, they put it this way. Did Spirit Mountain have the right to the premium proceeds themselves, or did they simply have the right to the amount of the premiums owed? The question is, what property interest, if any, does Spirit Mountain have in Patriot's commingled account? If the monies are held in trust for the benefit of Spirit Mountain, then there's a sufficient property interest. The money belongs to Spirit Mountain, and if it's taken, it's embezzled from Spirit Mountain. But conversely, if the money is not held in trust, if the money is taken, it is not embezzled from Spirit Mountain. You can't embezzle property of Spirit Mountain that is not Spirit Mountain's property. Now, the government looks at the provision of the agreement between Spirit Mountain and Patriot that says that Patriot is going to act as a fiduciary and may not make personal or corporate use of the funds without the authorization of the agreement. And they say that that provision, even though it doesn't use the word trust, is sufficient that a jury could rationally find beyond a reasonable doubt that that created a trust relationship. However, there are five undisputed facts in the record that defeat that notion as a matter of law. The court in Lawson held that whether or not under 641 money embezzled from the government is property of the government is an issue of law. Similarly, in the coupon clearing services case that's cited by both parties, it was put this way. Are they really undisputed facts, or is what is in dispute what inference ought to be drawn from the facts? And I would submit it's the latter. There are five facts here from which this Court must, as a matter of law, find that no trust was created, that Spirit Mountain did not have a sufficient property interest in that money, and therefore that money could not have been embezzled by Spirit Mountain. The first is that Spirit Mountain specifically authorized Patriot to commingle the money in Patriot's general operating account. Now, this was not a partial commingling. This was a complete commingling. They were allowed to put it in their operating account, not just with premiums that they might have collected on behalf of other insurers, but with any of their own funds. Second, Patriot owed a calculated amount to Spirit Mountain in fixed intervals. It did not matter whether Patriot actually had collected that money from the insurers. If the insurers owed it, Patriot was responsible for paying it to Spirit Mountain. So they're not paying specific dollars. I collect the dollar, I pay a dollar. They're paying a fixed amount whether they collect the dollar or not. As some of the cases put it, it was Patriot and not Spirit Mountain that bore the risk of nonpayment by the insurers. These two facts, the commingling of the funds and the calculated payments at fixed intervals, those two alone are sufficient as a matter of law to defeat the creation of a trust. However, in addition to that, the agreement makes clear that Patriot is acting as an independent contractor. Section 1B and Exhibit 92 is the program administrator agreement, the agreement between the parties. Section 1B of the agreement explicitly says that the program administrator, Patriot, will at all times act as an independent contractor. And Section 7B says that the program administrator may, in its own name and on its own behalf, take all reasonable actions it deems appropriate to collect premiums on the business written under this agreement. The fourth undisputed fact that defeats the trust is that when the money was sitting in Patriot's commingled account, Patriot was entitled to keep the interest that was earned on that account, not Spirit Mountain. Section 7CT2 of the agreement says, the program administrator shall be entitled to receive all interest imputed to the agency account. The agency account is defined as Patriot's operating account. And the company, Spirit Mountain, hereby grants, as may be required by law, the program administrator, Patriot, the specific right to such interest. That's the interest. The interest. What about the principle? Look at paragraph A. The program administrator shall under no circumstances make any personal or corporate use of the funds not authorized by the agreement. That is correct, Your Honor. There is no question that they have the right to dispose of the or to keep the interest. That is correct, Your Honor, and that's exactly what I started with. But that is the provision that what you just highlighted, that the government says from that provision the jury could conclude beyond a reasonable doubt that a trust was created. You're told you're keeping it as a fiduciary and you may not make personal or corporate use of it. I'm responding to your point about they can keep the interest. The implication is, well, they can't do anything but remit the principle. They can keep the interest on all of the money that is in that account. Right. Including the premiums. That's right. But that suggests that they can't do anything with the principle. There is no question under the contract they're not allowed to make personal or corporate use of the funds. They may be in breach of the contract if they do that. They may be violating their fiduciary duty if they do that. But that's a separate question from whether or not a trust is created. And whose property it is, the fact that the interest is retained by Patriot, the case law says, is a factor in determining that it is not a trust. They're not holding that money on behalf of somebody else. Now, they owe the money. There's no question that there is a debt there. And let me then move to the fifth factor, and that is that Spirit Mountain took no security interest in those premiums. So not only is it simply money that is owed to Spirit Mountain, it is unsecured. And I submit respectfully the government gets this exactly backwards in the appellate brief. The operative section here is section 7C6. And what it says is the company shall have the first lien upon commissions and or service fees due under this agreement for any indebtedness to the program administrator to the company, including premiums. What that says is Patriot gets $100 from an insurer. And Patriot is entitled to a 20 percent commission. So under the contract, they're required to pay $80. They now owe $80 to Spirit. What Spirit Mountain is saying is if you don't pay it, you don't pay it on time, we take a lien in the $20. We take a lien in what you were owed in commission. Not we take a lien in the $80. Not we're taking a lien in the amount that is owed to us. So Patriot is not only not the owner of that property, they're simply a creditor of that $80. They're an unsecured creditor of that $80. Now, we submit in our briefs and contend that it is state law that governs whether or not a trust was created. It's a property interest. Cite the Lawson case, which looks to state law to determine property interest. An embezzlement case under 641. Also cite a D.C. Circuit case, Taylor. But the result is the same whether we look to federal law or we look to state law. Chicago Fire is the Supreme Court of Arizona case. It's the controlling authority in Arizona. The facts in that case are virtually identical to the facts in this case. And the Court finds that the first two of the five facts that I articulated standing alone defeat the notion that a trust was created and make it a legal impossibility for embezzlement to have occurred under the circumstances. But, again, the same result obtains under federal law. And there are a number of cases. I think the Freight Forwarder cases seem to be quite similar. There's also the Lawson case involving the auctioneer. But what's interesting about the cases, they really break down into two sets of cases. One are cases where we know whose property it is. It's the post office's property and somebody embezzles the money from the post office. It's government property. And the question is, did the person who took the money, did he have a sufficient fiduciary relationship with the government, with the post office, that he could have embezzled the money when he took it? But the other line of cases isn't about the relationship of the defendant. And we're not arguing that Mr. LaGuire didn't have a sufficient relationship with Patriot or Spirit Mountain that he could have embezzled money. It's what was the relationship between the alleged victim, Spirit Mountain, and the property. In In re Morales, which is a First Circuit case, and in In re Lord, a Seventh Circuit case, Federal cases reporting to apply Federal law, the Court finds even in a case where a contract specified that it was creating a trust, it used the word trust, the Court found that, in fact, based on the same factors that I have articulated, there was, as a matter of law, no trust relationship. Even though they said that they were creating a trust relationship, that that language alone, or, as the Court said in Morales, the self-serving language, did not change the actual nature of the property. Since there was no preclusion on commingling and the amounts due were due, whether or not they were collected, it was a relationship of a debtor-creditor, not a trust relationship. Finally, my last point, before saving a couple minutes for rebuttal, would be, even if the Court were to disagree that these five factors, as a matter of law, mean that there was no trust and that this was not Spirit Mountain's property, the course of dealing indicates that to be the case. The Government talks about supposed concealment. What was not concealed, what was never concealed, was the fact that Patriot was not remitting the monies in a timely basis to Spirit Mountain. The reason that Spirit Mountain knew that, that its manager of risk services knew that, that the D.C. Department of Insurance knew that, is because Mr. LaGuire was telling them. Every month, he would send them a report and say, here's how much we've collected, and here's how much we're turning over, and so, therefore, here's the difference, what we owe you. Obviously, they knew, Your Honor, that Patriot was making corporate or personal use of those funds because they weren't turning the money over in a timely fashion. And what did they do? They said, well, try to catch up. Try to pay more. None of them said, wait a minute, you can't do that. We created a trust when we set up this. You can't owe us money ever under any circumstances. They simply asked to collect the money. And so I would say the course of dealing means that they affirmed the notion that no trust was created. And again, Chicago Fire in the Tennessee case at its site talks about that as well. Once you accept the fact in the course of dealing that the party is commingling and then turning it over, it defeats any trust that ever could have been created. Thank you, Mr. Pond. We've got about a minute left when you come back. Thank you, Your Honor. Good morning. Good morning, and may it please the Court. My name is Gary Restaino on behalf of the United States in support of the judgment of conviction against Duane LaGuire for taking insurance premiums which the record establishes were held in trust and giving them to his indicted but severed co-conspirator Rick Renzi for Renzi's personal use. LaGuire did this despite warning from the regulator and the captive manager. He did this in contravention to the industry standards and the norms and practices of the Patriot Insurance Agency, Incorporated, and the facts in the light most favorable to the government with the inferences that should be drawn support the fact that this money was held in trust on behalf of Spirit Mountain and its underlying insurance. And let me begin by giving a brief description from the facts of the nature of this particular industry. Patriot Insurance had for years been providing insurance largely to a group of about And they provided that insurance before 2005. Mr. LaGuire was there for part of the time, and part of it predates him, through underwriters, through actual insurance companies. And they would take the money in, and they would give it over to the insurance companies minus their commission. Allie Gamble, a long-time employee of Patriot, says that money was held in trust and placed in a trust account. Now, at the time when Spirit Mountain was formed, this is now a new venture. But it doesn't change the industry standards or the practices at Patriot Insurance. Money is still taken from those thousand or so non-profits. It comes into Patriot Insurance's bank account, and Patriot Insurance has to pay over money to the Spirit Mountain Risk Retention Group, which is a risk pool, but it's really owned by those same insurance. The insurance give the money in trust to Patriot Insurance, expecting that it will be paid over to this larger risk pool. The problem is Duane LaGuire wears all the hats and is the treasurer, as the facts allege and as the record shows, of Patriot Insurance as well as this Spirit Mountain entity. That's why really there is a heightened responsibility here. Now, we would submit that it is undisputed, and the only inference that can be drawn from July of 2006 is that this money was held in trust. And that's because through July of 2006, Patriot Insurance, when it took the checks in from the insurers, stamped those checks, Patriot Insurance trust account, and deposited them with a Patriot Insurance trust account deposit ticket. Kennedy, was there actually a separate trust account? There was a separate account, Your Honor. A separate trust account? There was a separate trust account, an operating account, although at some point they ceased using those particular names for the two accounts. Well, and then at one point they quit stamping the checks, you know, to the trust account, right? That's correct, Your Honor. So there was – was there still a trust account? There was. As Agent Chernobyl from the government testified, all of the money generally still went into that one account first. Was that going to a general operating account? Is that what it was? No, Your Honor. Well, were other funds put in there, too? Other premium funds were commingled with that, and then the money would go from there typically into another account used as an operating account. We acknowledge the names of those accounts were not necessarily trust and operating at that point. But as Agent Chernobyl testified, and I believe it's SCR 105, the other money that went into that account was from smaller insurance relationships. This is where that money went. It's from there that the money was paid over to another account of Patriot Insurance. And so we would contend this is not just some vestigial aspect of a prior relationship, this trust stamp. At least through July of 2006, and therefore for counts 36 and 38 of the second superseding indictment, this money is going where it's always gone, into an account that they call a trust account. I really don't understand what the reason is to make how they stamp the check. If they have the right to commingle it with their general operating account, they can stamp it widget account. If they can put whatever they want on it, they can. It doesn't really make any difference. If they have the right to commingle it, they have the right to commingle it. Well, they do have the right to commingle it, but they still put it into a trust account. Well, what if they did? And then they can take it out. I mean, if they have the right to commingle it and if they have to, you know, just simply account for the money later on. Isn't the question, as Judge Silverman implying, is that there has to be a legal obligation that they can't be commingled? And that's, you know, I mean, that's why lawyers get disciplined all the time, because they commingle their client's money, you know, from the trust account with their own account. The difference is the legal obligation. Now, was there a legal obligation against commingling? Well, there was a legal obligation against using. And the obligation against commingling was you can commingle other insurance company money. But at the end of the day, it's not the commingling that creates the crime of embezzlement. It's the taking of all the money out of the accounts. No, no, no. We're trying to determine. You're way ahead of us. At least I'm trying to determine whether there was a, you know, a trust. And we believe there was, Your Honor. I know you believe there is, but you haven't convinced me yet. So I've started with the stamping, and I will leave the stamping alone at this point. We also believe that the testimony comes out and calls it a trust or a trust-like relationship. Defendant's argument seems to be a hyper-technical one that somehow there has to be a trustee in all of this. It was the money entrusted to one person for the benefit of another. We have experts and lay witnesses that say it was held in trust. That's not really their argument. Their argument is that as a matter of Arizona law, Chicago Fire says when you have an arrangement of this type, it's not a trust. And let me go directly to that, then, Your Honor. So Chicago Fire is, first of all, a Hoover administration case, a case that's old. It's still on the books, right? It is, but it's at a time before risk retention groups existed. The record in this case does show that risk retention groups come into play in the 80s or so. Do you have any case that says this doesn't apply to risk retention groups or anything like that? We don't, Your Honor. But what we have is the fact that this case, let me start over. Lawson is the case that says to some extent State law can be used in trying to determine these relationships. But what Lawson really says is State statutes, the California equivalent of the Uniform Commercial Code, can be used. The problem with using case citations is that we don't know all of the underlying records. In Chicago Fire, those circumstances, the court held, did not lead to a trust relationship for the purpose of collecting on the surety or indemnity bond. We believe our circumstances are different, and, indeed, we don't even have the underlying contract from Chicago Fire. The reason Chicago Fire is not apposite to this case is that, first of all, there's no apparent contractual relationship that calls for a fiduciary or heightened obligation as there is here. Moreover, in Chicago Fire, the record seems clear that no one ever objected to the fact that funds were commingled. The instant case, we do believe that the record shows that the regulator, Dana Shepard from the District of Columbia Division of Insurance, Securities and Banking, objected to the fact that money was not being paid over. And the captive manager, sort of the consultants to Patriot Insurance at Spirit Mountain, kept on saying, you've got to start paying this money over. Well, there's no question they owed the money. That doesn't really prove the point, though. It doesn't prove it's held in trust. It proves that they owed the money. That's correct. Which they don't dispute. We still go back to the first couple of lines and really all of Section A in the agreement. The program administrator holds it as a fiduciary and shall under no circumstances make any personal or corporate use of the funds. They violate not just the contract, which clearly creates a property right. You can't tell someone not to use the funds if you don't have the property right in them. And the actual taking of those funds is what creates the crime. I want to be clear. We're not saying that they were just late, 15 days, 20 days, a couple of months in paying over. The money was gone. When, in later years, money came in on insurance renewals, that was used to pay the last year's premiums. This raises a point of concealment. The reason it's concealed is because no one at Spirit Mountain actually reviewed or had many meaningful access to the books of Patriot Insurance. And so when Duane LaGuire said, we're just late in paying, nobody knew that the money just wasn't there. The money was gone from the account. And we think that that's a fair inference the jury can rely on, in addition to the testimony that shows that this was held in trust. We also believe that the jury's verdict is consistent in that regard. There were ten embezzlement counts. The jury found LaGuire guilty on eight of those and acquitted on two. And on the two in which there was acquitted, all of the money in the Patriot Bank accounts could have satisfied the obligations to Spirit Mountain. In the other eight, all of the money could not have satisfied it, which meant that that money was gone. I'd like to go back to the testimony, which we do believe the jury also should be able to rely on. Again, Eric Nordman, an expert in the industry for an association of insurance commissioners, says that a fiduciary is someone who is trusted and that the money is held in trust as a fiduciary. That's pages 59 and 61 of the SCR. Allie Gamble, again, the lay witness perspective, the employee, says that in the prior experiences with Patriot, the money is held in trust in a trust account. And we believe the cases also show this to be true, including Christensen, which is a case that the defendants cited. In Christensen, it was essentially a credit union manager that was taking money. And it was the breach of trust that the Court was deciding on in that case. Now, surely the credit union manager was not technically in the position of a trustee over the accounts, but they did hold the money in trust, as that term should commonly be understood. In defendants' proposed jury instructions, it talked about money being entrusted to one person for the benefit of another. We think that is consistent with the insurance industry practices, as Nordman says, and consistent with Patriot's own practices. Moreover, consistent with LaGuire's own practices, he's a CPA. He has a resume that's on the record that says he's familiar with and responsible for operating trust and operating accounts. This is at a time when the risk retention group has already been formed. We also know that he knows the arguments and the obligations of someone in the industry from the test that he took in order to be licensed as an insurance person in the industry. There are all kinds of uses of the word trust, including in this case by experts and lay witnesses, as you indicated. But given this context, don't you think it was plain error not to define for the jury what the meaning of trust was in that instruction? And let me go to that part of the argument. And that's exactly what we'll be talking about, that it's not in the jury instruction. We don't think it was error. We don't think it was plain. And we don't think it affected any substantial rights. We think of trust as a common term. And the best example I can give is that of the Dixon case, or the best analogy. That's an alien smuggling case in which the term commercial advantage was not specifically defined. We would suggest to the Court that entrust is a much more commonly understood term than commercial advantage to jurors. And we would also suggest that the jury instruction as given should be read as a whole sentence, and that's that the defendant willfully embezzled or misappropriated any of the moneys, funds, premiums, or other property held in trust for the use or benefit by the insurance company or underwriter. But that's, you know, that's a legal term as opposed to commercial advantage, which is just an ordinary, everyday term. To me, you know, I mean, lawyers take a full year course on what the word trust means. And there's, you know, the treatises defining trust. And how can you say that's just a common word that everybody should understand? Because it's not in the legal context. Your Honor, it's not even in the statute. The essential elements of this statute are provided. But it's in the instruction. It is in the instruction. But we would contend it's not as a legal definition. But entrust is the same as entrusted to for the use and benefit of another person. And it's something that was used by lay and expert alike in this case. If it's not a legal definition, I think the – you may be digging yourself a hole, because what's a crime, then, if it's not a legal definition? The crime is embezzlement, Your Honor. The crime of embezzlement. Without a legal trust. Because the embezzlement statute doesn't contain the word trust. I mean, if I give him my money and say, now, Barry, I'm trusting you with this, I mean, you know, does that create a trust in that – in the embezzlement sense? It's giving him that money in trust. Yes, Your Honor. I want you to hold it for me. If he spends it, is he embezzling it? You might not have a fiduciary clause in the contract between you, and so we'd ask that you look at all of the other factors present in this case. But certainly, that's a factor present in giving that money over. Well, then, shouldn't the judge have said in deciding whether these people held in the trust, you look at various factors, including A, B, C, D, and E? Well, again, Your Honor, there was no objection to it by the defense. They got their proposed language. We don't believe that this was plain error in those circumstances. Moreover, we do believe just briefly that the intent is there in this case. Neither party has spent a whole lot of time on arguing this. We do think it was concealment because the Patriot books and records were not accessible to the regulators. The e-mails certainly suggest concealment in saying, oh, they've caught on finally now that we're only paying half of the money. And again, this is a case where there were warnings from the regulator, warning from the captive manager, and it's not a case where Patriot was simply a little bit late in paying over the money. The money was taken. It was given as insurance premiums have been given in this industry and with this company for years, and it was taken over for LaGuire's giving to his friend Renzi rather than going into the risk pool that's essential on the relationship. Finally, I'd point out John Harkavy says that this money is being held for the benefit of SMIC. That's, again, testimony that's in the record, S.E.R. 96. And that testimony, combined with the fiduciary clause in the contract and the absolute statement that the money cannot be used for personal or corporate use, we believe satisfies the obligations here, nor do we believe that there's any ambiguity in the statute that would preclude the Court from affirming the judgment. Thank you. Thank you very much. Mr. Pollack, you had about a minute or so left. Thank you, Your Honor. First of all, Ms. Gamble or Mr. Harkavy's opinions simply are irrelevant. We're talking about as a matter of law, given the nature of the relationship, was this a trust? That's for the Court to decide, not for expert witnesses or even lay witnesses to opine on. As far as the account, Section 7a says, the program administrator may deposit said funds in its general operating account, the agency account, which may include premiums from other carriers. So they're specifically authorized. They have no obligation to put it in a trust account. The evidence was that they put it originally into an account that was called a trust account, but it never functioned that way. This deposit stamp is simply the stamp saying it's being endorsed to that account. It's not a stamp that's ever shown to Spirit Mountain. Spirit Mountain knows that they've authorized the money to go into a commingled account. What's your response to his statement that you're being hyper-technical? Well, I don't think so. I think it goes to the heart of the crime. You can't embezzle from Spirit Mountain, property of Spirit Mountain, that doesn't belong to Spirit Mountain. So I don't think it's technical at all. A couple last points. Spirit Mountain had every right to inspect all of the books and records of Patriot. This idea that the contrary is not supported, section 9 of the agreement specifically gives them that right. And lastly, Your Honor, the idea that trust doesn't matter, that it's not an element of the offense, it is an element of the offense, and the statute does talk, that has to be property of the insurer. And if there's no trust here, it's not property of the insurer and it can't be embezzled from the insurer. Thank you. Mr. Stainill, thank you. The case just argued is submitted. We'll stand and recess. Thank you. All rise.
judges: Adelman, Tashima, Silverman